FILED by _AW_ D.C.

**Jul 11, 2023**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 23-60133-CR-SMITH/VALLE
CASE NO. _____

18 U.S.C. § 1344
18 U.S.C. § 1343
18 U.S.C. § 982(a)(2)

**UNITED STATES OF AMERICA**

**vs.**

**YVONNE SANANDRES,**

    **Defendant.**

_____/

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Indictment:

### OVERVIEW

#### The Small Business Administration

1.    The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.

2.    The SBA enabled and provided for loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

#### The Coronavirus Aid, Relief, and Economic Security Act

3.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19

pandemic. In addition to traditional SBA funding programs, the CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak, which was declared a nationwide disaster by the President of the United States on March 13, 2020.

### The Paycheck Protection Program

4.     One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

5.     In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the loan. In the PPP loan application, the small business (through its authorized representative) was required to provide, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

6.     A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

7.      PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

## The Economic Injury Disaster Loan Program

8.      Another source of relief provided by the CARES Act were Economic Injury Disaster Loans ("EIDL") to business owners negatively affected by the COVID-19 pandemic. Applicants applied for EIDL directly through the SBA, which reviewed the information and dispersed the funds to the applicants without an intermediary financial institution.

9.      Using the SBA online portal, a business was required to submit an EIDL application to the SBA and provide information in support of each EIDL application about its operations, such as the number of employees, gross revenues, and the cost of goods sold for the 12-month period preceding January 31, 2020. Applicants were not required to provide supporting documentation with EIDL applications but were required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge. All applications submitted on July 11, 2020 or after were handled by an SBA contractor with servers located in Des Moines, Iowa. Prior to July 11, 2020, EIDL applications were submitted through three different servers, which were located in: Boydton, Virginia; West Des Moines, Iowa; or Quincy, Washington.

10.     EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor. The amount of the loan was determined based, in part, on the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold. Any EIDL funds were issued directly by the SBA.

11.     Once an SBA EIDL application was approved, the SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the EIDL funds based on those applications. The disbursement of the EIDL funds were transmitted by the Financial Management System ("FMS") to the Treasury and then to the recipient's bank account. The primary server for the FMS is in Sterling, Virginia. Upon approval of an application for an EIDL or cash advance grant, the SBA would disburse the funds.

**The Defendant and Relevant Entities**

12.     Artemis Data Systems LLC ("Artemis Data") was a Florida limited liability company with its principal place of business listed as 330 SW 2 Street, Suite 203, Fort Lauderdale, Florida 33312.

13.     Ascher Contracting Services, Inc. ("Ascher Contracting") was a Florida corporation with its principal place of business listed as 330 SW 2 Street, Suite 203, Fort Lauderdale, Florida 33312.

14.     Boca Property Group LLC ("Boca Property Group") was a Florida limited liability company with its principal place of business listed as 330 SW 2 Street, Suite 203, Fort Lauderdale, Florida 33312.

15.     D'Stilled Ventures Management LLC ("D'Stilled Ventures") was a Florida limited liability company with its principal place of business listed as 330 SW 2 Street, Suite 203, Fort Lauderdale, Florida 33312.

16.     Flying Horses Management LLC ("Flying Horses") was a Florida limited liability company with its principal place of business listed as 330 SW 2 Street, Suite 203, Fort Lauderdale, Florida 33312.

17.     Kelsan, Inc. ("Kelsan") was a Florida corporation with its principal place of business listed as 330 SW 2 Street, Suite 203, Fort Lauderdale, Florida 33312.

18.     Rihas Management Group LLC ("Rihas Management") was a Florida limited liability company with its principal place of business listed as 330 SW 2 Street, Suite 203, Fort Lauderdale, Florida 33312.

19.     Defendant **YVONNE SANANDRES**, an individual who resided in Broward County, Florida, was the president of Ascher Contracting and Kelsan, and she was the manager of Artemis Data, Boca Property Group, D'Stilled Ventures, Flying Horses, and Rihas Management.

20.     Cross River Bank was a financial institution based in Fort Lee, New Jersey, whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC"). Cross River Bank was an approved SBA lender of PPP loans.

## COUNT 1
### Bank Fraud
### (18 U.S.C. § 1344)

1.     Paragraphs 1 through 7, 13, 19, and 20 of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.     In or around May 2021, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**YVONNE SANANDRES,**

did knowingly, and with intent to defraud, execute, attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, including Cross River Bank, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, attempt to execute, and cause the execution of, a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of one or more said financial institutions by means of false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Section 1344(1) and (2).

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendant to unlawfully enrich herself by, among other things: (a) submitting and causing the submission of a false and fraudulent application for a PPP loan guaranteed by the SBA in order to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) diverting fraud proceeds for her personal use and benefit.

## MANNER AND MEANS OF THE SCHEME AND ARTIFACE

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included the following:

4.      **YVONNE SANANDRES** submitted and caused the submission of a false and fraudulent application for a PPP loan to Cross River Bank in the name of a business entity which she created, owned, and controlled.

5.      The PPP loan application falsely and fraudulently represented the monthly payroll, number of employees, and gross income of the entity and included falsified tax forms.

6.      As a result of the false and fraudulent application for a PPP loan, Cross River Bank disbursed approximately $116,848 in loan funds into a bank account controlled by **YVONNE SANANDRES**.

7.      **YVONNE SANANDRES** unlawfully diverted the PPP loan funds for her personal use and benefit.

## EXECUTION OF THE SCHEME AND ARTIFICE

8.      On or about May 12, 2021, in Broward County, in the Southern District of Florida, the defendant,

**YVONNE SANANDRES,**

did knowingly, and with intent to defraud, execute, attempt to execute, and cause the execution of

the scheme and artifice to defraud a financial institution and to obtain any of the monies, funds, and other property owned by, and under the custody and control of, said financial institution, by means of materially false and fraudulent pretenses, representations, and promises, that is, the defendant submitted a fraudulent PPP loan application and related documents to Cross River Bank on behalf of Ascher Contracting for the purpose of obtaining a PPP loan in the amount of approximately $116,848.

In violation of Title 18, United States Code, Sections 1344(1) and (2), and 2.

## COUNTS 2-15
### Wire Fraud
### (18 U.S.C. § 1343)

1.    Paragraphs 1 through 3 and 8 through 19 of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.    From in or around April 2020, through in or around April 2022, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### YVONNE SANANDRES,

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.    It was a purpose of the scheme and artifice for the defendant to unlawfully enrich herself by, among other things: (a) submitting and causing the submission of false and fraudulent

applications for EIDL funds made available through the SBA in order to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) diverting fraud proceeds for her personal use and benefit.

## MANNER AND MEANS OF THE SCHEME AND ARTIFACE

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included the following:

4. **YVONNE SANANDRES** submitted and caused the submission of false and fraudulent EIDL applications to the SBA, via interstate wire communications, in the names of business entities which she created, owned, and controlled.

5. The EIDL applications falsely and fraudulently represented the number of employees at the respective business entities and their annual gross revenues.

6. As a result of the false and fraudulent EIDL applications, the SBA disbursed approximately $1,051,000 in loan funds into bank accounts controlled by **YVONNE SANANDRES**.

7. **YVONNE SANANDRES** unlawfully diverted the EIDL funds for her personal benefit.

## USE OF WIRES

8. On or about the dates specified as to each count below, the defendant, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 2 | April 21, 2020 | Wire transfer in the amount of $1,000 from FMS servers in Virginia to Kelsan's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL application number 3300466694. |
| 3 | May 5, 2020 | Wire transfer in the amount of $1,000 from FMS servers in Virginia to Ascher Contracting's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL application number 3601238061. |
| 4 | May 5, 2020 | Wire transfer in the amount of $6,000 from FMS servers in Virginia to Artemis Data's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL application number 3601236963. |
| 5 | May 26, 2020 | Wire transfer in the amount of $149,900 from FMS servers in Virginia to Kelsan's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL number 1412217805. |
| 6 | June 17, 2020 | Wire transfer in the amount of $108,900 from FMS servers in Virginia to Flying Horses' account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL number 5602477910. |
| 7 | June 17, 2020 | Wire transfer in the amount of $1,000 from FMS servers in Virginia to Rihas Management's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL application number 3000106751. |
| 8 | June 18, 2020 | Wire transfer in the amount of $1,000 from FMS servers in Virginia to Boca Property Group's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL application number 3000205681. |
| 9 | June 23, 2020 | Wire transfer in the amount of $149,900 from FMS servers in Virginia to Boca Property Group's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL number 9007397903. |
| 10 | June 23, 2020 | Wire transfer in the amount of $122,000 from FMS servers in Virginia to Rihas Management's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL number 7159637903. |
| 11 | June 23, 2020 | Wire transfer in the amount of $2,000 from FMS servers in Virginia to D'Stilled Ventures' account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL application number 3305533462. |

| 12 | June 23, 2020 | Wire transfer in the amount of $149,900 from FMS servers in Virginia to Ascher Contracting's account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL number 7503707900. |
|----|----|----|
| 13 | June 26, 2020 | Wire transfer in the amount of $85,400 from FMS servers in Virginia to D'Stilled Ventures' account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL number 3094088007. |
| 14 | June 26, 2020 | Wire transfer in the amount of $1,000 from FMS servers in Virginia to Flying Horses' account at JPMorgan Chase Bank, N.A. in the Southern District of Florida for EIDL application number 3601373644. |
| 15 | April 4, 2022 | Wire transfer in the amount of $278,000 from FMS servers in Virginia to **YVONNE SANANDRES'** account at Regions Bank in the Southern District of Florida for EIDL number 1412217805. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **YVONNE SANANDRES**, has an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1343 or 1344, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes, or is derived from, proceeds obtained directly or indirectly, as a result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2).

3.      The property subject to forfeiture as a result of the alleged offense includes, but is not limited to, the following:

         i.      Real property located at 4326 Jackson St., Hollywood, Florida;

         ii.      Real property located at 11108 Whitehawk St., Plantation, Florida;

         iii.      Real property located at 2701 E Sunrise Lakes Blvd., #312, Sunrise, Florida;

iv.  One White 2016 BMW 4 Series 428i Gran Coupe 4D, VIN No. WBA4A9C59GGL87320.

4.    The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum of approximately $1,173,848.00, which represents the total amount of funds involved in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

5.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p). Such substitute property includes, but is not limited to, the following:

i.  real property located at 6350 NW 135th Ave., Morriston, Florida;

ii.  real property located at 425 N. Andrews Ave. # 201, Fort Lauderdale, Florida;

iii.  real property located at 1847 SW 24 Ave., Fort Lauderdale, Florida, and

iv.  One Silver 2016 BMW X5, VIN No. 5UXKR2C52GOU17145.

All pursuant to Title 18, United States Code, Section 982(a)(2), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

SEAN PAUL CRONIN
ASSISTANT UNITED STATES ATTORNEY

12

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**                    **CASE NO.:** _____

**v.**

YVONNE SANANDRES,                               **CERTIFICATE OF TRIAL ATTORNEY**
_____ /
Defendant.                                      **Superseding Case Information:**
                                                New Defendant(s) (Yes or No) _____
**Court Division** (select one)                 Number of New Defendants _____
☐ Miami   ☐ Key West   ☐ FTP                    Total number of counts _____
☒ FTL     ☐ WPB

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) No
    List language and/or dialect: _____

4.  This case will take ___8___ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                (Check only one)
    I    ☐ 0 to 5 days              ☐ Petty
    II   ☒ 6 to 10 days             ☐ Minor
    III  ☐ 11 to 20 days            ☐ Misdemeanor
    IV   ☐ 21 to 60 days            ☒ Felony
    V    ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) No
    If yes, Judge _____ Case No. _____
7.  Has a complaint been filed in this matter? (Yes or No) No
    If yes, Magistrate Case No. _____
8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) No
    If yes, Judge _____ Case No. _____
9.  Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Sean Paul Cronin
Assistant United States Attorney
Court ID No.   A5500940

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**   Yvonne Sanandres

**Case No:** 

Count #: 1

Bank Fraud

Title 18, United States Code, Section 1344
* **Max. Term of Imprisonment: 30 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 5 years**
* **Max. Fine:  $1,000,000**

Counts #: 2-15

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment: 20 years per count**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 3 years**
* **Max. Fine: The greater of $250,000 or twice the gross loss or gain**

Count #:




* **Max. Term of Imprisonment:**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:**
* **Max. Fine:**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**